Deborah DONOGHUE, Plaintiff,

v.

CASUAL MALE RETAIL GROUP, INC. and JEWELCOR MANAGEMENT INC., Defendants.

No. 03 CIV. 1037(KMW).

United States District Court, S.D. New York.

March 31, 2006.

David Lopez, Southampton, NY, for Plaintiff.

Alan Roy Friedman, Kramer, Levin, Naftalis & Frankel, LLP, Amy Busa, Fixler & Laguttuta, Dennis H. Tracey, III, Robert Brian Black, Hogan & Hartson L.L.P., New York City, George A. Reihner, Elliott, Reihner, Siedzikowski & Egan P.C., Scranton, PA, Richard L. Huffsmith, Wilkes–Barre, PA, for Defendants.

*ORDER*

KIMBA M. WOOD, District Judge.

### I. *Overview*

Deborah Donoghue ("Plaintiff") brought this shareholder action, pursuant to Sec-

tion 16(b) of the Securities Exchange Act of 1934 ("Section 16(b)"), 15 U.S.C. § 78p(b)(2005), against Defendants Casual Male Retail Group, Inc. ("Casual Male") and its beneficial owner, Jewelcor Management, Inc. ("Jewelcor"). Plaintiff sought to recover "short-swing" profits that she alleges Jewelcor realized from the purchase and sale of Casual Male common stock within a six-month period. By Order dated March 31, 2005 (the "March 31, 2005 Order"), this Court granted Plaintiff's motion for summary judgment and, accordingly, denied Defendants' motion for summary judgment. Judgment was entered on April 11, 2005. On April 22, 2005, Jewelcor filed a motion, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Civil Rules, to vacate the judgment entered April 11, 2005; on April 25, 2005, Casual Male filed a similar motion. Defendants primarily argue that the Court erred in finding that the transaction at issue—Jewelcor's surrender of Casual Male shares to exercise an option that it was granted by Casual Male with the approval of the board of directors—was not exempt under Rule 16b–3 of the Exchange Act, 17 C.F.R. § 240.16b–3. For the reasons set forth below, the Court grants Defendants' motions to vacate the April 11, 2005, judgment in this case, entered pursuant to the Court's Order dated March 31, 2005.

## II. *Background*

Familiarity with the March 31, 2005, Order is presumed. A summary of the facts of this case (drawn from the parties' Stipulation of Undisputed Facts and Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Rule 56.1 Statement"), and attached exhibits, unless otherwise

noted), as well as a summary of the Order itself, are provided here for convenience and clarity.

## A. Facts

Casual Male retained Jewelcor to render management and consulting services as an independent contractor in October 1999; in partial compensation for Jewelcor's services, Casual Male granted Jewelcor an Option to purchase 400,000 shares of its common stock at a fixed price of $1.156 per share, on or prior to April 28, 2002 (the "Option"). The agreement granting the Option ("Option Agreement") indicated that payment for the Option could be made (i) by cash or check, (ii) "in the form of shares of Common Stock that are not then subject to any restrictions," or (iii) by delivering an exercise notice to Casual Male, along with irrevocable instructions to a broker to promptly deliver cash or check to Casual Male to pay the exercise price. The board of directors of Casual Male approved the grant of this Option to Jewelcor. On April 18, 2002, Jewelcor exercised the Option by surrendering 79,467 Casual Male shares or the right to receive those shares, valued at the contemporaneous fair market value of $5.82 per share.[1] Within six months before and after that date, Jewelcor made open-market purchases of Casual Male shares. At all relevant times, Jewelcor was the beneficial owner of more than 10% of Casual Male common stock, and it was 100% owned by Jewelcor Incorporated, which was 100% owned by SH Holdings Incorporated, which was 93% owned by Seymour Holtzman ("Holtzman") and his wife, Evelyn Holtzman (with the rest owned by Holtzman's children). When Casual Male granted Jewelcor the

---

1. A copy of a worksheet produced by Casual Male describing the transaction, attached as Exhibit G to the Rule 56.1 Statement, indicates that Casual Male calculated the number of shares (at the contemporaneous fair market value of $5.82 per share) necessary to pay the exercise price, withheld those shares, and issued the resulting 320,533 shares to Jewelcor.

Option, Holtzman was the President of Jewelcor and the Chairman of its Board of Directors; when Jewelcor surrendered the Casual Male shares to exercise the Option, Holtzman was an officer and director of Casual Male. Jewelcor was never an officer or director of Casual Male.

### B. March 31, 2005, Order

The March 31, 2005, Order held that Jewelcor was liable, under Section 16(b) of the Exchange Act, for the profits resulting from its effective sale of Casual Male shares—through its surrender of those shares to exercise the Option—and purchases of Casual Male shares within six months. The Order found that: 1) Jewelcor's surrender of Casual Male shares was not exempt from Section 16(b) liability on the ground that it related to the exercise of a derivative security; 2) rather, Jewelcor's surrender of the shares constituted a "sale" for the purposes of Section 16(b); 3) under the "unorthodox transaction" doctrine, the sale in question involved the potential for speculative abuse that Section 16(b) was intended to prevent, and therefore the sale gave rise to liability; and 4) the sale was not exempt under Rule 16b–3, 17 C.F.R. § 240.16b–3, which, in relevant part, exempts dispositions to the issuer, by directors and officers of the issuer, of issuer equity securities, provided that the terms of the disposition are approved in advance by the board of directors of the issuer. The Order found that Rule 16b–3 could apply in the instant case, even though Jewelcor was not itself an officer or director of Casual Male at any time, because Holtzman had a pecuniary interest in, and was the beneficial owner of, the shares surrendered by Jewelcor to exercise the Option. The Order further found that an SEC No–Action Letter indicated

that, in order for an insider's indirect pecuniary interest in transactions with the issuer conducted through other parties to be exempt under Rule 16b–3, the approval of such a transaction had to specify " 'the existence and extent of the officer's or director's indirect interest in the transaction' " and " 'that the approval [was] granted for purposes of making the transaction exempt under Rule 16b–3.' " March 31, 2005, Order at 17 (quoting American Bar Ass'n, SEC No–Action Letter, 1999 WL 61837 (Feb. 10, 1999)). The Order noted that the Option Agreement did not specify the existence and extent of Holtzman's interest in the transaction, and could not have done so because he was not a director or officer of Casual Male at the time the Option was granted. But the Order recognized that the Court of Appeals for the Second Circuit, in *Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC*, 298 F.3d 136, 144 & n. 7, 145 (2d Cir.2002), *cert. denied*, 537 U.S. 1191, 123 S.Ct. 1262, 154 L.Ed.2d 1024 (2003), rejected the argument that the Rule 16b–3 exemption does not apply if the issuer's board approves an option plan in advance of the grantees becoming directors of the issuer, and the Court of Appeals also rejected the suggested requirement of a purpose-specific approval. The March 31, 2005, Order went on to find, however, relying again on *Gryl*, that the board-approved Option Agreement was not sufficiently "specific" for the transaction to be exempted.[2] The Order concluded that Jewelcor's surrender of shares was not exempted under Rule 16b–3. Therefore, the March 31, 2005, Order granted Plaintiff's motion for summary judgment; denied Defendants' motion for summary judgment; and found Defendants liable in the amount of $259,138.

---

**2.** Because this is the main section of the March 31, 2005, Order that the Defendants

contend was in error, it will be discussed in greater detail below.

## C. Motions to Vacate

On April 22, 2005, Jewelcor filed a motion, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Civil Rules, to vacate the judgment entered April 11, 2005. On April 25, 2005, Casual Male filed a similar motion.[3] Defendants argue that "in entering judgment against Jewelcor, the Court misapprehended the SEC's regulations governing 'cashless exercise' options, which have long been exempt from Section 16(b)." Defendant Jewelcor Management's Memorandum in Support of its Motion to Vacate Judgment ("Jewelcor Mem.") 1.[4] Specifically, Defendants contend that "the Court's analysis overlooks existing law providing that board approval of a specific stock option grant with a 'cashless exercise' provision constitutes approval of the 'cashless exercise' of that option and does not implicate the 'formula plan' analysis of Rule 16b–3." Jewelcor Mem. 3.[5] In support of their argument, Defendants point to: a specific provision of Note 3 to Rule 16b–3; the regulatory history of Rule 16b–3; sections of the release issued by the Securities and Exchange Commission in adopting revisions to Rule 16b–3 in 1996—Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Releases No. 34–37260, 35–26524, 61 Fed.Reg. 30,376 (June 14, 1996) ("1996 Release")—and SEC No–Action letters; furthermore, Defendants argue that the Court's reliance on certain statements in *Gryl* concerning plan specificity requirements was mistaken insofar as those statements addressed "formula plan" requirements, whereas this case involves a one-time grant to a single party. Defendants also contend that the Court's concern regarding the potential for unfair market manipulation presented by the type of transaction involved here was misplaced.[6]

---

**3.** Casual Male joined in Jewelcor's Memorandum of Law, and did not submit a separate memorandum of law.

**4.** The term "cashless exercise," as used by the SEC, encompasses "payment of an option exercise price by delivery or withholding of securities," as well as situations when "an insider exercises an option acquired pursuant to a Rule 16b–3 plan and immediately sells a portion of the shares to pay the exercise price under a cashless exercise program." Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Releases No. 34–37260, 35–26524, § IV.I, 61 Fed.Reg. 30,376, 30,388 & n. 147 (June 14, 1996) ("1996 Release"). But the term is often used to refer, more specifically, to a transaction whereby "a broker pay[s] the exercise price of an employee stock option" and "[t]he ultimate source of the funds will be the proceeds of the sale of company stock underlying the option." John T. Bostelman, Practising Law Institute, The Sarbanes–Oxley Deskbook § 13:2.5.G.1 (2004).

Here, Jewelcor engaged in a "cashless exercise" insofar as it apparently paid the option exercise price through the withholding of securities by the issuer (but not by selling a portion of its shares through a broker-assisted cashless exercise). Although the Option Agreement—in stating that the payment of the purchase price for the Option shares could be made, *inter alia*, "in the form of shares of [Casual Male] Common Stock that are not subject to any restrictions (subject to the discretion of the Board of Directors of the Company)," Rule 56.1 Statement Exh. B.—does not explicitly refer to a "withholding right," there is no dispute in this case that this provision allowed Jewelcor to pay for the exercise of the option by surrendering shares, or the right to receive shares, to Casual Male. *See* Plaintiff's Memorandum of Law in Support of Her Motion for Summary Judgment 5–6.

**5.** As further discussed *infra*, note 9 and accompanying text, a formula plan determines the amount, price and timing of grants to directors and officers using a formula based on objective criteria.

**6.** Defendants add in passing that, similarly, "the transaction at issue here would constitute an 'unorthodox' transaction with no 'potential for speculative abuse,' and thus would not be deemed a sale subject to Section 16 liability." Jewelcor Mem. 11 n. 8.

In opposing Defendants' motion to vacate, Plaintiff argues that Rule 16b–3 does not exempt the transaction at issue here because the Rule applies only to officers and directors, and Jewelcor was not an officer or director of Casual Male at any relevant time. Plaintiff states that "[a]ll that the defense says generally about Rule 16b–3 is true and would require a different conclusion to the case were the rule applicable to a more–than–10% beneficial owner." Plaintiff's Memorandum of Law in Opposition to the Defendants' Motions to Vacate Judgment ("Pl.Mem.") 3. As Defendants point out, Plaintiff apparently does not take issue with Defendants' main argument in support of their motion to vacate; rather, Plaintiff seems to contend that the motion should be denied on the basis of an argument which, as further discussed *infra*, the Court rejected in its March 31, 2005, Order. Defendant Jewelcor Management's Reply Memorandum in Support of its Motion to Vacate Judgment ("Jewelcor Reply") 1–3.

## III. *Discussion*

### A. Standard on a Motion for Alteration or Reconsideration

 Under Rule 59(e) of the Federal Rules of Civil Procedure ("Rule 59(e)") and Local Civil Rule 6.3, a party may move to "alter or amend" the judgment, Fed. R.Civ.P. 59(e), and for "reconsideration or reargument," Loc. Civ. R. 6.3.[7] "District courts in the Second Circuit have held that '[s]uch motions are narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court.'" *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.,* No. 01 Civ. 3796, 233 F.R.D.

355, 360 (S.D.N.Y.2005) (quoting *Range Road Music, Inc. v. Music Sales Corp.,* 90 F.Supp.2d 390, 391–92 (S.D.N.Y.2000); alteration in *Commerce Funding*). Thus, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995) (finding that district court did not abuse its discretion in reconsidering its earlier ruling where movant introduced "additional relevant case law and substantial legislative history"); *accord Chamberlin v. Principi,* 2006 WL 647785, *1, 2006 U.S. Dist. LEXIS 10254, *1–*2 (S.D.N.Y. Mar. 15, 2006); *Commerce Funding Corp.,* at 359–60. "The controlling decisions or factual matters presented by a litigant for reconsideration must have been put before the court in the underlying motion." *Commerce Funding Corp.,* at 360–61.

"Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories ... or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998); *accord Chamberlin,* 2006 WL 647785 at *1, 2006 U.S. Dist. LEXIS 10254 at *2; *Commerce Funding Corp.,* at 359–60. But "a motion for reconsideration may be granted to correct a clear error, or prevent 'manifest injustice.'" *Chamberlin v. Principi,* 2006 WL 647785 at *1 (quoting *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992)).

### B. Rule 16b–3 Exemption

First, the Court agrees with Defendants that the transaction at issue here stems

---

**7.** Although Jewelcor and Casual Male characterize their motions as seeking to "vacate" the judgment, the motions should more aptly be called motions to "alter or amend" the judgment, Fed.R.Civ.P. 59(e), or for "reconsideration or reargument," Loc. Civ. R. 6.3.

from a one-time grant of an option rather than a general "plan." Before Rule 16b–3 was revised in 1996, it applied only to "employee benefit plan transactions." *See* 17 C.F.R. § 240.16b–3 (1995). Furthermore, under this prior version of the Rule, in order for grants and awards from the issuer to the director or officer to be exempt, they had to be made pursuant to a plan that, *inter alia*, either: 1) was administered by "disinterested" directors, or 2) by its terms, "either state[d] the amount and price of securities to be awarded to designated officers and directors or categories of officers and directors ... and specif[ied] the timing of awards to officers and directors; or set[ ] forth a formula that determine[d] the amount, price and timing, using objective criteria." Rule 16b–3(c)(2)(i), (ii) (1995). In revising the Rule in 1996, the SEC expanded the scope of the rule to include transactions that were not engaged in pursuant to an employee benefit plan, and "eliminate[d] many of the conditions of [former] Rule 16b–3," including "the disinterested administration or formula plan requirements regarding grant transactions." 1996 Release, § II.A., 61 Fed.Reg. at 30,378–79.[8] Note 3 of the revised Rule 16b–3, however, states that when approval is given by the board of directors (or shareholders or "Non–Employee Directors", as provided in Rule 16b–3), approval must be given for "each specific transaction," and not just "a plan in its entirety," unless the plan fixes the terms and conditions of each transaction in advance, such as in a "formula plan." 17 C.F.R. 240.16b–3 note 3.[9]

In the March 31, 2005, Order, the Court cited this provision of note 3 to Rule 16b–3, and relied on the "formula plan" analysis in *Gryl*, 298 F.3d at 142–43, which involved an "overall plan" of which the "multiple securities transactions" at issue were "but a constituent part," *id.* at 141. The Court failed to recognize that the approval given by the board of directors in this case was as to a one-time, specific grant involving a particular entity, not a general "plan in its entirety." The Court now acknowledges that *Gryl's* discussion of "formula plan" requirements is not directly applicable here.

Furthermore, the Court now recognizes that, in focusing on the concerns underlying "formula plan" specificity requirements as noted in *Gryl* and in applying those considerations in this case, the Court misinterpreted the kind of "specificity" required for board-approved transactions to be exempt under Rule 16b–3. In its March 31, 2005, Order, this Court noted the Court of Appeals' emphasis in *Gryl* that, to be exempt under Rule 16b–3, a board-approved option plan must be "sufficiently prescriptive in order to 'prevent insiders from having, directly or indirectly, any control over the terms of their own awards, and therefore removes [sic] the ability of insiders to time their acquisitions under the plan to take advantage of inside information.'" *Id.* at 142–143 (quoting Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Release No. 28,869 [1990–1991 Transfer Binder], Fed. Sec. L. Rep (CCH) ¶ 84,709, at 81,269, 56 Fed Reg. 7,242, at 7,255 (Feb. 21, 1991) ("1991 Release")).

---

**8.** Rule 16b–3 was again revised in August 2005; however, the revisions, which primarily clarified that transactions between an issuer and a director or officer do need to be "intended for a compensatory or other particular purpose," 17 C.F.R. § 240.16b–3 (2006)—are not relevant here.

**9.** "A plan that constitutes a 'formula plan' under staff interpretations of [former] Rule 16b–3(c)(2)(ii) will be considered a formula plan for this purpose." 1996 Release, § II.D.3, 61 Fed.Reg. at 30,381 n. 71.

The Court of Appeals found that the plan at issue—which, *inter alia,* provided that the options for shares in one company would be automatically converted into options for shares in another company at the time of a merger—met these requirements. This Court found that, by contrast, "[i]n the present case, Holtzman did have the ability to alter the timing and exercise terms of the Option in his favor" insofar as "Jewelcor could elect to exercise its Option at any time within a period of over three years" and "Jewelcor could choose to exercise the Option in several different ways, including in cash or in Casual Male stock." March 31, 2005, Order at 19. This Court concluded that the board-approved agreement in this case was therefore not specific enough to be exempt under Rule 16b–3. *Id.* at 19–20.

But the Court now sees that, in *Gryl* itself, when determining whether the plan was "sufficiently prescriptive," the Court of Appeals focused on the fact that the options were *granted* on a fixed date; there is no indication that the options had to be *exercised on* a fixed date. Rather, it appears that the options in *Gryl,* similarly to the Option granted here, had to be exercised *by* a certain date. *See Gryl,* 298 F.3d at 142 (noting that the option conversion would take place at the "effective time" of the merger, and that the "duration and all other exercise terms" of the new converted options would be identical to the old options); *Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC,* No. 00 Civ. 9173, 2001 WL 1006628, at *1 n. 3 (S.D.N.Y. Aug. 31, 2001), *aff'd,* 298 F.3d 136 (2d Cir.2002) (noting that although all of the individual defendants acquired their converted options on the same day, they exercised them

at slightly different times). Furthermore, when enumerating the important elements of the board-approved option plan in *Gryl,* no mention was made of the ways in which the grantees could effect payment for the exercise price—suggesting that this aspect of the plan was not crucial to a determination of whether it met the requirements of Rule 16b–3.[10]

Indeed, sources that were not previously considered by the Court indicate that neither the fact that Jewelcor could exercise its options at any time during a three-year period, nor the fact that it could choose among a certain number of ways of paying the exercise price, placed the Option Agreement beyond the scope of Rule 16b–3 exemption. *See* American Bar Ass'n, SEC No–Action Letter, 1996 WL 729381, at *8 & n. 2 (Dec. 20, 1996) (stating that the "specific approval standards of Note 3 [of Rule 16b–3] will be satisfied to exempt [board-approved dispositions to the issuer upon the exercise of derivative securities] where [, *inter alia,*] the derivative securities are issued pursuant to terms that contemplate [a disposition to the issuer] upon exercise at the holder's discretion within a finite term" and noting that "[t]he duration of the derivative security will be considered finite where it is a fixed term of years, or otherwise discernible at the time the award is initially approved"); *cf.,* under the prior (arguably more stringent) version of Rule 16b–3, Pinnacle West Capital Corp., SEC No–Action Letter, 1992 WL 59852, at *3, *9 (Mar. 25, 1992) (formula plan that satisfied requirements of (former) Rule 16b–3(c)(2)(ii) granted options that could be exercised at any time during a period of ten years, and for which payment of the exercise price could be made by check, in shares of common stock,

---

10. This specific second argument concerning *Gryl* is not one made by the Defendants; rather, in considering Defendants' arguments, the Court has developed a better understanding of that decision.

or in a combination thereof); Teradata Corp., SEC No–Action Letter, 1991 WL 247391, at \*2, \*9 (Nov. 20, 1991) (similar).[11] Thus, the Court recognizes that it erred in concluding, in its March 31, 2005, Order, that the board-approved Option Agreement was not sufficiently "specific" for the transaction at issue to be exempt under Rule 16b–3 because, under the Agreement, Jewelcor could choose to exercise its Option at any point within a finite period, by paying the exercise price in one of several different ways.

Furthermore, the Court overlooked a relevant statement in Note 3 to Rule 16b–3, as well as statements in other SEC documents, concerning dispositions pursuant to rights to withhold or deliver shares in order to pay the exercise price of an option. Under Note 3 to Rule 16b–3:

> Where the terms of a subsequent transaction (such as the exercise price of an option, or the provision of an exercise or tax withholding right) are provided for in a transaction as initially approved pursuant to paragraphs (d)(1), (d)(2) or (e), such subsequent transaction shall not require further specific approval.

17 C.F.R. § 240.16b–3.[12] *See also* American Society of Corporate Secretaries, SEC No–Action Letter, 1996 WL 709328, at \*7 (Dec. 11, 1996) (stating that if the board of directors approved the grant of an option, the terms of which permitted the withholding or delivery of shares in payment of the exercise price, in accordance with Rule 16b–3(e), the subsequent withholding transaction will not require further approval). Thus where the board of directors approved the grant of an option, including the provision of a withholding right, the board need not approve the subsequent exercise of the option and the related withholding of the shares to exercise the option. And, in adopting the 1996 revisions to Rule 16b–3, the SEC indicated that the disposition of securities pursuant to such a withholding or delivery right is exempt under Rule 16b–3. *See* 1996 Re-

---

**11.** Although an SEC No–Action Letter "lacks any binding precedential force on the federal courts," a district court may "rely on the letter for whatever persuasive value it may have." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 129 (2d Cir.2001). In its March 31, 2005, Order, the Court did not rely on any specific sources—beyond *Gryl*—in finding that the aspects of the Option Agreement discussed above made it insufficiently "specific" to qualify for Rule 16b–3 exemption. The Court finds the SEC No–Action letters cited here persuasive, particularly in conjunction with the Court's present better understanding of *Gryl*, and the sources discussed *infra*.

**12.** As further explained in the 1996 Release:

> A note has been added to the new rule to clarify that if the terms of a subsequent transaction are provided for in the transaction as initially approved, the subsequent transaction does not require further specific approval. For example, the exemption will apply to the disposition to the issuer of a derivative security upon its exercise or con-

version, if such exercise is pursuant to the terms provided in the derivative security as initially approved in its acquisition.

1996 Release, § II.E, 61 Fed.Reg. at 30,382 (footnote omitted). The example given in this statement appears to refer to the disposition of a derivative security occurring upon the exercise of the derivative security itself, rather than specifically to a disposition pursuant to a withholding or delivery right to pay the exercise price of the derivative security. *Cf. id.* § II.D.3, 61 Fed.Reg. at 30,381 (referring to note 3 in the context of grants, awards, and acquisitions from the issuer, and stating that "the acquisition of underlying issuer equity securities that occurs upon the exercise or conversion of a derivative security will be exempt, provided that the exercise is pursuant to terms provided in the derivative security originally approved in its acquisition"). But the reference to a subsequent "disposition" is broad enough to encompass the disposition of shares to the issuer in satisfaction of the exercise price. And in any event note 3 itself explicitly refers to a withholding right as an example.

lease, § II.E, 61 Fed.Reg. at 30,381 (stating that the revised rule Rule 16b–3 "will exempt dispositions of issuer equity securities to the issuer pursuant to ... [t]he right to have securities withheld, or to deliver securities already owned, ... in payment of the exercise price of an option"); *accord id.* § III.C, 61 Fed.Reg. at 30,383 ("the exercise of a right to surrender or withhold securities in connection with the exercise of a derivative security ... will be an exempt disposition of issuer equity securities to the issuer").[13]

This is in keeping with the underlying rationale of Rule 16b–3 (as revised in 1996), as expressed by the SEC:

> [Transactions between an issuer and its officers and directors] do not appear to present the same opportunities for insider profit on the basis of non-public information as do market transactions by officers and directors. Typically, where the issuer, rather than the trading markets, is on the other side of an officer or director's transaction in the issuer's equity securities, any profit obtained is not at the expense of uninformed shareholders and other market participants of the type contemplated by the statute. Based on its experience with the Section 16 rules, the Commission is persuaded that transactions between the issuer and its officers and directors that are pursuant to plans meeting the administrative

requirements and nondiscrimination standards of the Internal Revenue Code and the Employee Retirement Income Security Act of 1974 ("ERISA"), or that satisfy other objective gate-keeping conditions, are not vehicles for the speculative abuse that section 16(b) was designed to prevent. Accordingly, these transactions are exempted by new Rule 16b–3 as adopted.

1996 Release, § I, 61 Fed.Reg. at 30,377. In *Gryl,* the Court of Appeals quoted these statements from the 1996 Release and concluded:

> So long as the relevant securities transaction is between an issuer and insider, and so long as the terms and conditions of that transaction receive advance approval by the board of directors, there exists sufficient protection to ensure that any short-swing profit taking that follows is not the result of unfair market manipulation.

*Gryl,* 298 F.3d at 145–46. In light of this, the Court recognizes that, in its prior Order, *see* March 31, 2005, Order at 19–20, the Court expressed misplaced concern that Jewelcor's surrender of shares—in connection with its exercise of the Option it was granted with the approval of Casual Male's board of directors—could lead to short-swing profits resulting from unfair market manipulation.[14]

---

**13.** More generally, as pointed out by Defendants, the 1996 Release addresses "participant-directed transaction[s]," which "require[ ] the participant to exercise investment discretion as to either the timing of the transaction or the assets into which the investment is made"—such as "the exercise of an option"—and states that "[p]articipant-directed dispositions are eligible for the 'Dispositions to the Issuer' exemption." 1996 Release, § II.D.1, 61 Fed.Reg. at 30,380 & n. 64. (These are not to be confused with a "Discretionary Transaction," however, which has a specific meaning under Rule 16b–3 and is

exempt only if it complies with special requirements. *See* 17 C.F.R. § 240.16b–3(b)(1), (f).)

**14.** Defendants contend that, for the same reason, the Court erred in finding that the transaction at issue here is an "unorthodox" transaction with the potential for speculative abuse. *See supra note* 6. In light of the Court's decision in this Order, and given that Defendants make this argument in passing, in a footnote, the Court will not address it as a separate point.

Finally, the Court notes that it will not revisit its rejection, in the March 31, 2005, of the argument that Plaintiff seems to seek to revive in opposing Defendants' motion to vacate. As noted earlier, in its opposition to the motion, Plaintiff concedes that "[a]ll that the defense says generally about Rule 16b–3 is true and would require a different conclusion to the case were the rule applicable to a more–than–10% beneficial owner." Pl. Mem. at 3. But Plaintiff argues that Rule 16b–3 does not exempt the transaction at issue here because the Rule applies only to officers and directors, and Jewelcor was not an officer or director of Casual Male at any relevant time. As stated in the summary of the March 31, 2005, Order, the Court rejected this argument in that Order. *See* March 31, 2005, Order at 13–19. Thus Plaintiff takes the unusual position that the Court should deny Defendants' motion to vacate on the basis of an argument that the Court rejected in the Order that Defendants are seeking to vacate.[15] Furthermore, Plaintiff offers no reason for the Court to revisit this aspect of the March 31, 2005, Order.[16]

For the reasons above, the Court agrees with Defendants that its March 31, 2005, Order was based on a clear error insofar as the Court concluded that Jewelcor's surrender of Casual Male shares to Casual Male, in connection with Jewelcor's exercise of the board-approved Option Agreement—and the right included in that Agreement to have shares withheld or delivered to pay the exercise price—was not exempt under Rule 16b–3 because the Option Agreement was not sufficiently "specific" and therefore presented the danger of "unfair market manipulation."

## IV. *Conclusion*

For the reasons stated above, the Court grants Defendants' motions to vacate the April 11, 2005, judgment in this case, entered pursuant to the Court's Order dated March 31, 2005. The Court hereby vacates that portion of its March 31, 2005, Order, at 19–24, that found that the transaction at issue was not exempt under Rule 16b–3 because the Option Agreement was not sufficiently "specific," and that the Defendants were therefore liable in the amount of $259,138 to Plaintiff. In light of the non-vacated portions of its March 31, 2005, Order, and the reasons stated in this Order, the Court grants Defendants' motion for summary judgment and, accordingly, denies Plaintiff's motion for summary judgment.

---

**15.** In their Reply to Plaintiff's opposition, Defendants stated that, if the Court did revisit this issue, "there are genuine issues of material fact that would preclude summary judgment in Plaintiff's favor." Jewelcor Reply 2 n. 1. Out of an abundance of caution, the Court asked for supplemental letter briefs containing further explanation of and support for this statement; however, in light of the above, the Court need not reach the issues discussed in the supplemental briefing submitted by Jewelcor—which, the Court notes, raised other independent theories.

**16.** Moreover, the Court notes that, in adopting revisions to Rule 16b–3 in August 2005, the SEC reaffirmed that Rule 16b–3 can exempt "[a]n officer's or director's indirect pecuniary interest in transactions between the

issuer and certain other persons and entities." *OWNERSHIP REPORTS AND TRADING BY OFFICERS, DIRECTORS AND PRINCIPAL SECURITY HOLDERS*, Releases No. 33–8600, 34–52202, 35–28013, § II, 2005 WL 1843461, *4 & n. 35 (Aug. 3, 2005) ("2005 Release") (citing American Bar Ass'n, SEC No–Action Letter, 1999 WL 61837 (Feb. 10, 1999)). The SEC also cited with approval *Gryl's* understanding of Rule 16b–3(d)(1) (which is echoed by Rule 16b–3(e) concerning dispositions to the issuer) as "requir[ing] only that the transaction involve an acquisition of issuer equity securities from the issuer, the acquirer be a director or officer of the issuer at the time of the transaction, and the transaction be approved in advance by the issuer's board of directors." *Id.* § II, 2005 WL 1843461 at *4.

The Clerk of the Court is directed to close this case. Any pending motions are moot.

SO ORDERED.