**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

———————————————————————

JOHN OLAGUES,

    Plaintiff - Appellant,

v.

RICHARD E. MUNCRIEF; DENNIS
CAMERON; WPX ENERGY, INC.,

    Defendants - Appellees.

No. 18-5018
(D.C. No. 4:17-CV-00153-CVE-JFJ)
(N.D. Okla.)

———————————————————————

**ORDER AND JUDGMENT**[*]

———————————————————————

Before **BRISCOE**, **MORITZ**, and **EID**, Circuit Judges.

———————————————————————

John Olagues, a purported shareholder of WPX Energy, Inc. (WPX), brought

this derivative action against WPX and two of its officers—Richard Muncrief and

Dennis Cameron—under § 16(b) of the Securities and Exchange Act of 1934, seeking

disgorgement of $384,924 in alleged short-swing profits. *See* 15 U.S.C. § 78p(b). The

district court granted summary judgment in favor of WPX, Muncrief, and Cameron

———————————

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment isn't binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.
But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R.
32.1.

(collectively, the defendants), ruling that Olagues failed to show they violated

§ 16(b). Olagues now appeals that order. For the reasons discussed below, we affirm.

## Background

In an effort to "strengthen[]" the "commitment" of its officers and employees to WPX's success, WPX established an Incentive Plan (the Plan) that allows those officers and employees to acquire or increase their equity ownership in WPX under certain circumstances. App. 294. To that end, the Plan provides for a Compensation Committee, composed entirely of non-management directors, that is empowered to award shares of WPX stock to its corporate officers as part of their compensation. The Plan also tasks the Compensation Committee with determining the terms and conditions of those awards. Additionally, the Plan authorizes the Compensation Committee to "take such actions as necessary" to ensure that these awards "comply with applicable provisions of Rule 16b-3."[1] *Id.* at 305.

Pursuant to the Plan, the Compensation Committee approved and executed a Restricted Stock Unit (RSU) Agreement with Muncrief—WPX's former President and current Chairman and Chief Executive Officer. The Compensation Committee also approved and executed an RSU Agreement with Cameron—WPX's Senior Vice President and General Counsel.[2] In relevant part, the RSU Agreements provided both

---

[1] "Rule 16b-3" refers to 17 C.F.R. § 240.16b-3, a regulation promulgated by the Securities and Exchange Commission (SEC). App. 297. As discussed in more detail below, Rule 16b-3 provides that certain transactions are exempt from § 16(b). *See* § 240.16b-3(d), (e).

[2] The record contains both Muncrief's RSU Agreement and a copy of a standard RSU Agreement. But it doesn't contain Cameron's RSU Agreement.

Muncrief and Cameron the right to receive WPX shares on predetermined vesting dates. This case arises from a series of stock transactions that occurred on the open market and pursuant to these RSU Agreements.

Specifically, between December 2014 and August 2015, Muncrief made several open-market purchases of WPX shares and Cameron became the indirect beneficial owner of 1,800 WPX shares purchased by his wife. Neither Muncrief nor Cameron sold any WPX shares on the open market during this time period. But in addition to the open-market purchases, Muncrief and Cameron each acquired shares of WPX stock through their RSU Agreements. Those shares vested on May 15, 2015, and March 3, 2015, respectively. And when the RSUs vested, they triggered certain tax-withholding requirements outlined in section 5(e) of the RSU Agreements (the Withholding Provision). Thus, WPX withheld a portion of Muncrief's and Cameron's shares to pay the tax-withholding obligations associated with their awards.

After discovering these transactions, Olagues accused Muncrief and Cameron of engaging in improper short-swing sales. And he demanded that WPX seek recovery of Muncrief's and Cameron's profits. *See* § 78p(b) (authorizing shareholders to bring suit "in the name and [o]n behalf of [a securities] issuer" to disgorge short-swing profits that are improperly obtained by corporate insiders). In

Nevertheless, the parties don't suggest that Cameron's RSU Agreement differs in any meaningful way from either Muncrief's RSU Agreement or from the standard RSU Agreement. Likewise, for purposes of the provision at issue in this appeal, we see no meaningful distinction between Muncrief's RSU Agreement and the standard RSU Agreement. Accordingly, we treat these documents as one and, where necessary, cite the RSU Agreement that WPX executed with Muncrief.

response, the defendants asserted that the tax-withholding transactions were exempt from § 16(b)'s disgorgement requirement under Rule 16b-3. *See* § 240.16b-3(d), (e); *supra* note 1. Olagues rejected their explanation. But he then offered to resolve the matter "for a reasonable consulting fee." App. 162. And he explained that if the defendants declined to take him up on this offer, he would file suit against them.[3]

The defendants refused to pay and Olagues filed suit, alleging that Muncrief and Cameron engaged in prohibited short-swing transactions in violation of § 16(b). The defendants moved to dismiss Olagues's complaint for failure to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6). For reasons not relevant here, the district court converted the defendants' motion to dismiss into a motion for summary judgment. It then agreed with the defendants that the transactions at issue were exempt from § 16(b)'s disgorgement requirement under Rule 16b-3 and entered summary judgment in their favor. Olagues appeals.

**Analysis**

We review de novo the district court's order granting summary judgment to the defendants, applying the same legal standards as the district court and viewing the evidence in the light most favorable to Olagues. *See Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[3] Olagues has filed similar lawsuits in California, Colorado, Delaware, Florida, Massachusetts, North Carolina, Ohio, Oklahoma, Texas, and Washington.

Before turning to the parties' arguments on appeal, we briefly address the legal backdrop against which those arguments arise. Under § 16(b), a shareholder "may bring suit against the officers, directors, and certain beneficial owners of [a] corporation"—i.e., its corporate insiders—"who realize any profits from the purchase and sale, or sale and purchase, of the corporation's securities within any 6–month period."[4] *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 223 (2012) (footnote omitted). These are known as "short-swing" profits. *Id*. And, if proven, § 16(b) requires the "disgorge[ment]" of such profits. *Id.*

But not all transactions occurring within a 6-month period are subject to § 16(b)'s disgorgement requirement. Instead, certain transactions fall beyond § 16(b)'s reach. Of particular significance here is Rule 16b-3(e), which contains a provision (the Board Approval Exemption) that exempts from § 16(b) certain dispositions from officers to issuers. Critically, the Board Approval Exemption applies only to those transactions that are (1) non-discretionary and (2) "approved in advance" by either the issuer's board of directors or an independent committee of

<hr/>

[4] As we previously noted, neither Muncrief nor Cameron sold any WPX shares on the open market between December 2014 and August 2015. Olagues therefore attempts to characterize their tax-withholding transactions as "sales." § 78p(b). We question whether these transactions qualify as sales under § 78p(b). *See Kern Cty. Land Co. v. Occidental Petro. Corp.*, 411 U.S. 582, 594–95 (1973) (evaluating applicability of § 16(b) by inquiring into "whether the particular type of transaction involved is one that gives rise to speculative abuse" (quoting *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 424 n.4 (1972))). But we need not affirmatively resolve this question; even assuming that these transactions are sales, for the reasons discussed in the text, they are exempt from § 16(b)'s disgorgement requirement under § 240.16b-3(d) and (e).

that board of directors. § 240.16b-3(e); *see also* § 240.16b-3(d)(1).

Here, the district court found that the transactions at issue were "non-discretionary tax[-]withholding transactions" and that those non-discretionary tax-withholding transactions were "specifically contemplated in the RSU Agreements." App. 476. Further, because WPX's Compensation Committee approved the RSU Agreements, the district court concluded that the Compensation Committee necessarily approved the tax-withholding transactions. Thus, the district court ruled that the Board Approval Exemption applied.

In challenging that ruling on appeal, Olagues advances two arguments. First, he asserts that the tax-withholding dispositions were purely discretionary. Second, he maintains that even if the tax-withholding transactions were non-discretionary, they weren't "approved in advance" because the Compensation Committee didn't specifically approve each individual transaction. § 240.16b-3(e). For the reasons discussed below, we disagree with him on both points.

## I.      Non-Discretionary Transactions

Olagues first argues that the Board Approval Exemption doesn't apply because the tax-withholding transactions were discretionary. *See* § 240.16b-3(e) (exempting from § 16(b) only those transactions that, among other things, do not constitute "[d]iscretionary [t]ransactions"). A "[d]iscretionary [t]ransaction" is "a transaction pursuant to an employee benefit plan that" (1) "[i]s at the volition of a plan participant," (2) "[i]s not made in connection with the participant's death, disability, retirement or termination," (3) "[i]s not required to be made available to a plan

6

participant pursuant to a provision of the Internal Revenue Code," and (4) "[r]esults in either an intra-plan transfer involving an issuer equity securities fund, or a cash distribution funded by a volitional disposition of an issuer equity security." § 240.16b-3(b).

Here, Olagues asserts that under the plain language of the RSU Agreements, WPX had unfettered discretion to either (1) "withhold shares to cover minimum withholding requirements," or (2) "refuse to withhold" such shares.[5] Aplt. Br. 18 (emphasis omitted). In support, Olagues relies primarily on the final sentence of the Withholding Provision.[6] In particular, he points to language that states, "[I]f federal

_____

[5] At the outset, we note that Olagues appears to be operating under the assumption that WPX is a "plan participant." § 240.16b-3(b)(1) (defining "[d]iscretionary [t]ransaction," in relevant part, as transaction made "at the volition of a plan participant"). We question whether WPX—as the Plan's issuer—is a "plan participant." *Id.* But we need not resolve this question. Even assuming that WPX is a "plan participant," we conclude, for the reasons discussed in the text, that the tax-withholding transactions were mandatory. That is, they were not made at WPX's "volition." *Id.*

[6] In what he frames as an additional basis for finding that the tax-withholding transactions are discretionary, Olagues cites 26 U.S.C. § 83(c) of the Internal Revenue Code. Section 83(c), in turn, allows individuals to defer taxes for periods during which the sale of property may subject them to liability under § 16(b). Here, Olagues asserts that Muncrief and Cameron weren't "required" to pay "the taxes for which the shares were withheld" because they could have deferred their tax liabilities under § 83(c). Aplt. Br. 22. And if Muncrief and Cameron weren't required to pay those taxes, he posits, then the tax-withholding transactions are discretionary. *See* § 240.16b-3(b)(1)(i) (defining "[d]iscretionary [t]ransaction," in relevant part, as "a transaction pursuant to an employee benefit plan that . . . [i]s at the volition of a plan participant").

But as the district court pointed out, this isn't a "separate argument[]," App. 492; instead, it's a circular one. If a transaction doesn't involve a substantial risk of forfeiture under § 16(b)—and any transaction that satisfies the Board Approval Exemption necessarily does not—then § 83(c) doesn't apply. Accordingly,

7

employment taxes become due when the Participant becomes entitled to payment of Shares, the number of Shares necessary to cover minimum statutory withholding requirements may, *in the discretion of* [*WPX*], be used to satisfy such requirements upon such entitlement." App. 330 (emphasis added).

But Olagues's selective reading of the Withholding Provision omits important qualifying language. As the defendants point out, the last sentence of the Withholding Provision states,

> [*T*]*o the extent permitted by Section 409A of the* [*Internal Revenue*] *Code and the guidance issued by the Internal Revenue Service thereunder*, if federal employment taxes become due . . . the number of Shares necessary to cover minimum statutory withholding requirements may, in the discretion of [WPX], be used to satisfy such requirements upon such entitlement.

*Id.* (emphasis added). And Section 409A of the Internal Revenue Code provides, in turn, that individuals receiving compensation pursuant to a nonqualified deferred compensation plan may defer tax liability for any deferred compensation until the income is actually received. *See* 26 U.S.C. § 409A(a)(2)(A) (authorizing deferred taxation when "compensation deferred under [a] plan . . . may not be distributed" until a later, "specified time"); 26 C.F.R. § 1.409A-1(b) ("[A] plan provides for the deferral of compensation if, under the terms of the plan and the relevant facts and circumstances, [a person] has a legally binding right during a taxable year to

---

as the district court noted, resolving the status of the tax-withholding transactions as exempt or non-exempt will necessarily dispose of Olagues's argument that Muncrief and Cameron could have deferred payment of their taxes under § 83(c). Thus, we need not separately address Olagues's § 83(c) argument.

8

compensation that, pursuant to the terms of the plan, is or may be payable . . . in a later taxable year.").

In short, Olagues is correct that the Withholding Provision gives WPX discretion to withhold the shares necessary to cover minimum statutory withholding requirements—but only when taxes become due *prior to* a vesting date. Critically, that's not what happened here. The record confirms that Muncrief and Cameron received their RSU awards on the scheduled vesting dates and that they incurred no tax liability prior to those dates. Thus, the language Olagues attempts to rely on is simply inapplicable here.[7]

Instead, we agree with the defendants that it is the first portion of the Withholding Provision that controls. That language states:

> *Shares that become payable* under this Agreement *will be paid* by [WPX] by the delivery to the Participant . . . of one or more certificates (or other indicia of ownership) representing shares of Common Stock equal in number to the number of Shares otherwise payable under this Agreement *less the number of Shares* having a Fair Market Value, as of the date the withholding tax obligation arises, *equal to the minimum statutory withholding requirements*.

---

[7] Additionally, by its own title, Section 409A addresses the "[i]nclusion in gross income of deferred compensation under *nonqualified deferred compensation plans*." § 409A (emphasis added). And, consistent with that title, the provisions of Section 409A apply only to scenarios involving "a nonqualified deferred compensation plan." § 409A(a)(1)(A)(i). "The term 'nonqualified deferred compensation plan' means any plan that provides for the deferral of compensation, other than—(A) qualified employer plan, and (B) any bona fide vacation leave, sick leave, compensatory time, disability pay, or death benefit plan." § 409A(d)(1). Because Olagues doesn't allege that the RSU Agreements are "nonqualified deferred compensation plans," his argument fails for this additional reason. § 409A(a)(1)(A)(i).

App. 330 (emphases added). And under this language, the tax-withholding transactions were mandatory: WPX was required to pay participants once shares "bec[a]me payable." *Id.* (describing how shares "*will*"—rather than *may*—"be paid" (emphasis added)). And in calculating the number of shares that "w[ould] be paid" to Muncrief and Cameron, WPX was required to (1) determine the "minimum statutory withholding requirements" associated with each award; (2) compute the number of shares equal to that withholding amount; and, critically, (3) withhold that number of shares from the number of shares to "be paid" to Muncrief and Cameron. *Id.*

Accordingly, we agree with the district court that the tax-withholding transactions were non-discretionary. *See* § 240.16b-3(e).

## II.     Approved in Advance

But that doesn't end the matter. Even assuming the tax-withholding transactions were non-discretionary, Olagues asserts that the district court nevertheless erred in ruling that those transactions were subject to the Board Approval Exemption. That's because, according to Olagues, the tax-withholding transactions weren't "approved in advance." § 240.16b-3(e).

In order to determine whether the tax-withholding transactions at issue here satisfied the Board Approval Exemption's approved-in-advance requirement, we ask whether the Compensation Committee (1) approved "each specific [tax-withholding] transaction," or (2) approved a plan that "fixed in advance" the "terms and conditions of each [tax-withholding] transaction," or (3) approved a transaction that "provided for" the withholding as part of a "subsequent transaction." § 240.16b-3 n.3; *see also* § 240.16b-

10

3(d)(1), (e).

Olagues doesn't dispute that the Compensation Committee approved Muncrief and Cameron's RSU Agreements. Nor does he dispute that the RSU Agreements included the relevant Withholding Provisions. Instead, he argues that the Compensation Committee's approval of these agreements was insufficient because it didn't include approval of "the specific terms of the [tax-withholding] dispositions." Aplt. Br. 20. That is, Olagues argues that even assuming the Compensation Committee approved a "plan" or a prior agreement that "provided for" certain tax-withholding procedures, the plan or prior agreement didn't "fix[] in advance" the terms and conditions of each of the tax-withholding transactions that subsequently occurred. § 240.16b-3 n.3. Thus, he argues that to satisfy the Board Approval Exemption's approved-in-advance requirement, the Compensation Committee was required to individually approve each of those tax-withholding transactions. *See id*. And because it didn't do so, Olagues insists that the tax-withholding transactions fell outside the Board Approval Exemption and remain subject to Rule § 16(b)'s disgorgement requirement.

We again disagree. As the defendants point out, the Withholding Provision fixed (1) the relevant time ("[u]pon conversion of RSUs into Shares under this Agreement"), (2) the relevant manner (in "Shares"), and (3) the relevant amount ("having a Fair Market Value . . . equal to the minimum statutory withholding requirements") of Muncrief's and Cameron's tax withholdings. App. 330. Thus, by approving the RSU Agreements, the Compensation Committee adequately "provided for" and "fixed in advance" the terms and conditions of the tax-withholding transactions. § 240.16b-3 n.3; *see also Gryl ex rel.*

11

*Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*, 298 F.3d 136, 142 (2d Cir. 2002) (finding that plan adequately fixed terms and conditions of transaction for purposes of the Board Approval Exemption because plan generally identified time, manner, and amount of transaction). Accordingly, the transactions required no further approval. *See* § 240.16b-3 n.3; *Donoghue v. Casual Male Retail Grp., Inc.*, 427 F. Supp. 2d 350, 356 (S.D.N.Y. 2006) ("[W]here the board of directors approved . . . the provision of a withholding right, the board need not approve the subsequent exercise of . . . the related withholding of shares."). And we therefore agree with the district court that the terms and conditions of the tax-withholding transactions were "approved in advance." § 240.16b-3(e).

## Conclusion

Because the tax-withholding transactions at issue were both non-discretionary and "approved in advance," they satisfy the Board Approval Exemption, thus rendering inapplicable § 16(b)'s disgorgement requirement. *Id.* Accordingly, Olagues failed to show that the defendants violated § 16(b). We therefore affirm the district court's order granting summary judgment to the defendants.

Nancy L. Moritz
Circuit Judge